USDC SCAN INDEX SHEET











LMH   10/21/99   15:21
3:97-CV-00359   CONTINENTAL LAB PROD V. MEDAX INTL INC
*159*
*O.*

FILED

99 OCT 21 PM 2:58

DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

CONTINENTAL LABORATORY
PRODUCTS, INC.,

                    Plaintiff,

    vs.

MEDAX INTERNATIONAL,
INC., ALMA A. TIMPSON, JR.,
PAUL M. JESSOP,

                  Defendants.

CASE NO:  97-CV-359 W (JAH)

**ORDER RE: PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT**

**[28 U.S.C. § 1927]**

## I.    BACKGROUND

Plaintiff Continental Laboratory Products, Inc. ("Plaintiff") commenced this action on March 4, 1997, alleging patent and trade dress infringement.  The facts underlying this action are well-known to the parties and fully set forth in this court's August 12, 1999 and September 20, 1999 orders, which are incorporated by reference herein.

1    On April 26, 1999 Plaintiff filed a motion for partial summary judgment that
2  sought to establish that the pipette tip packaging system produced and distributed by
3  Defendant Medax International, Inc. ("Medax") infringed Plaintiff's trade dress.
4  Plaintiff supported its motion, almost entirely, with evidence suggesting that Medax
5  deliberately copied the interior box design of Plaintiff's product.  Plaintiff repeatedly
6  argued that this evidence, standing alone, legally sufficed to shift the burden of proof
7  to Medax and to establish the elements of trade dress infringement as a matter of
8  law–including the essential element of secondary meaning.  Three days later, Medax
9  filed a motion for summary judgment, seeking judgment against Plaintiff's patent and
10  trade dress infringement claims.

11    On July 14, 1999, the court issued an order denying Plaintiff's summary
12  judgment motion.  The court's order found Plaintiff's motion legally frivolous,
13  noting that Continental had based its motion on a mischaracterization of controlling
14  Ninth Circuit authority.  (See Order Den. Pl.'s Mot. for Summ. J. re: Trade Dress
15  Claim at 7 ("July 14 Order")).  Plaintiff's argument that proof of deliberate copying
16  shifted the burden of proof to Medax, the court indicated, was directly contradicted
17  by controlling Ninth Circuit authority.  (July 14 Order at 7 n.4).  The court
18  indicated that it would, in a subsequent order, take up the issue of whether Plaintiff
19  should reimburse Medax for expenses it incurred opposing the motion.  (Id.).

20    By order dated August 12, 1999, the court granted in part Medax's motion for
21  summary judgment and dismissed Plaintiff's patent infringement claims with
22  prejudice.  (See generally Mem. Op. and Order; 1999 U.S. Dist. LEXIS 15383 (S.D.
23  Cal. Aug. 12, 1999) ("August 12 Order")).  The court devoted the last six pages of the
24  order to addressing whether Medax should receive reimbursement for expenses it
25  incurred opposing Plaintiff's trade dress motion for summary judgment.  The order
26  detailed numerous instances where Continental's briefs had asserted the erroneous
27  legal position and concluded:

28

Since its trade dress arguments relied on a legal position directly rejected by controlling authority, Continental's motion for partial summary judgment was legally frivolous. Continental did not argue for the good faith extension of existing law, did not attempt to distinguish Fuddruckers on its facts, did not argue that subsequent developments in the law eroded the rule from Fuddruckers, or employ any other similar permissible form of advocacy. Rather, Continental asserted a directly contrary rule of law and attempted to convince the court that its rule was controlling within the Ninth Circuit. Continental was clearly aware of Fuddruckers; it cited that case several times in its briefs, on two occasions to support a proposition directly opposite the one adopted by the court.

Pursuant to 28 U.S.C. § 1927, these circumstances may warrant requiring Continental's attorneys to reimburse Medax for all expenses incurred in opposing the motion for partial summary judgment. The court will reserve judgment on this issue until Continental's attorneys can be heard on the matter... Continental's attorneys shall provide supplemental memoranda and declarations on this issue within 20 days of service of this order.

(See August 12 Order at 29:11-26). The court indicated that it would not require Plaintiff's attorneys to reimburse Medax if they could show that their arguments "were not the result of recklessness, bad faith, or other vexatious conduct." (Id.).

## II.  DISCUSSION

On September 7, 1999, Plaintiff's attorneys submitted a 22-page response to the court's order to show cause, asserting that the court should not require them to reimburse Medax for the expenses it incurred opposing Plaintiff's motion for summary judgment. The response does not, however, address the primary concern addressed in the court's August 12 Order–that (1) Plaintiff filed a frivolous motion and that (2) all indications suggested that Plaintiff's attorneys knew the motion was frivolous at the time they filed it. The response consists of a long and oblique legal discussion that attempts to steer the court away from the core arguments presented

1  in the motion.  For the reasons expressed below, the court finds that the response
2  does not properly address the court's concerns, and that the circumstances of this case
3  amply support requiring Continental's attorneys to reimburse Medax for expenses
4  incurred in opposing the trade dress motion.

5             A.   LEGAL STANDARD

6        Title 28, United States Code, Section 1927 provides that "[a]ny attorney ... who
7  so multiplies the proceedings in any case unreasonably and vexatiously may be
8  *required by the court to satisfy personally the excess costs, expenses, and attorney's*
9  *fees reasonably incurred because of such conduct.*"  28 U.S.C. § 1927.  Sanctions
10  under this statute "must be supported by a finding of subjective bad faith."  In re
11  Keegan Management Co. Sec. Litig., 78 F.3d 431, 436 (9th Cir. 1996) (quoting New
12  Alaska Development Corp. v. Guetschow, 869 F.2d 1298, 1309 (9th Cir. 1989)).  "Bad
13  faith is present when an attorney knowingly or recklessly raises a frivolous argument,
14  or argues a meritorious claim for the purpose of harassing an opponent."  Id. (quoting
15  Estate of Blas v. Winkler, 792 F.2d 858, 860 (9th Cir. 1986) (citations omitted)).  A
16  court may therefore invoke Section 1927 against an attorney who (1) advances a
17  frivolous legal position, and (2) does so recklessly.  Id.  The court finds both elements
18  present here.

19             1.   FRIVOLOUSNESS

20        To establish trade dress infringement, Plaintiff bore the burden of establishing
21  that its trade dress was either inherently distinctive or had acquired secondary
22  meaning.  See, e.g., International Jensen, Inc. v. Metrosound U.S.A., Inc., 4 F.3d 819,
23  823 (9th Cir. 1993).  Continental's motion vigorously argued that evidence suggesting
24  that Medax deliberately copied Continental's product design shifts the burden of
25  proof to Medax and can suffice, by itself, to establish secondary meaning as a matter
26  of law. (See August 12 Order at 27-29 (citing passages from Continental's motion)).
27        As the court explained in its September 20, 1999 order denying Medax's
28  motion for summary judgment, this position finds no support in any of the cases

1 Continental relied upon.  The Ninth Circuit has squarely held that evidence of
2 deliberate copying raises an *inference* of secondary meaning but "does not in itself
3 shift the burden of proving secondary meaning from [plaintiff] to [defendant]."
4 Clamp Mfg. Co., Inc. v. Enco Mfg. Co., Inc., 870 F.2d 512, 516 (9th Cir. 1989);
5 Fuddruckers, Inc. v. Doc's B.R. Others, Inc., 826 F.2d 837, 844 (9th Cir. 1987).
6 "[E]vidence of copying is probative, but not determinative, of secondary meaning
7 [and thus] evidence of copying, while relevant evidence, does not trigger a
8 presumption of secondary meaning." J. Thomas McCarthy, McCarthy on
9 Trademarks and Unfair Competition § 15:38 at 15-55 (4th ed. 1999) (citing
10 Fuddruckers, Inc. and decisions from other circuits).

11     Having carefully reviewed Continental's attorneys' lengthy response to the
12 court's order to show cause, the court agrees with Medax that it is evasive, failing to
13 even address whether the summary judgment motion advanced a legally frivolous
14 position.  Although the response includes citations and lengthy block quotations
15 from various federal decisions, none of those decisions contradicts, undermines, or
16 even directly addresses Fuddruckers, Inc.'s holding that evidence of deliberate
17 copying cannot, standing alone, establish secondary meaning or shift the burden of
18 proof from Continental to Medax.  Notably absent from Plaintiff's motion for
19 summary judgment is any indication that the motion sought a good faith extension
20 or modification of existing law, and the response to the court's order to show cause
21 makes no attempt to defend the motion's specific legal position as it pertains to the
22 element of secondary meaning.

23     Although not clear from their response, Plaintiff's attorneys appear to argue
24 that the motion for partial summary judgment had merit based on the totality of
25 evidence in the record, including various filings and exhibits submitted in opposition
26 to two previous motions filed by Medax when this action was pending before the
27 Honorable Judith N. Keep. Plaintiff's attorneys also suggest that their motion had
28 merit because Judge Keep denied Medax's previous attempts to obtain dismissal and

1 | summary judgment against Continental's trade dress infringement claims.

2 |     These arguments lack merit for several reasons. First, as to the essential
3 | element of secondary meaning, Plaintiff's motion for partial summary judgment
4 | relied *exclusively* on evidence of deliberate copying and a flawed legal argument. (See
5 | Pl.'s Mem. P. & A. Supp. Mot. Summ. J. [Doc. No. 86] at 7-8). The motion's
6 | discussion of secondary meaning did not cite or refer to any of the evidence Plaintiff's
7 | attorneys now claim support their client's trade dress infringement claim. Moreover,
8 | the trade dress motion was the first time in this litigation that Plaintiff advanced the
9 | argument that evidence suggesting deliberate copying sufficed to establish secondary
10 | meaning.

11 |     Second, the court rejects the argument that the trade dress motion had merit
12 | because other aspects of the motion may have been meritorious. It is beyond dispute
13 | that Plaintiffs could not obtain summary judgment without establishing, as a matter
14 | of law, that its product design achieved secondary meaning. Since secondary meaning
15 | was an essential element of Plaintiff's trade dress claims, a frivolous argument as to
16 | secondary meaning rendered the entire motion frivolous. The mere fact that
17 | Plaintiff's arguments concerning likelihood of confusion and nonfunctionality were
18 | non frivolous does nothing to reduce the fact that the court could not, under
19 | controlling case law, have possibly granted the motion.

20 | **2. RECKLESSNESS**

21 |     On its face, Plaintiff's motion for partial summary judgment and its opposition
22 | to Medax's motion for summary judgment provide overwhelming evidence that
23 | Plaintiff's attorneys were at least reckless with respect to the soundness of their
24 | secondary meaning arguments. The court's August 12, 1999 order detailed the extent
25 | Continental's attorney distorted controlling case law. The court wrote:
26 | //

27 |

28 |

Continental's motion for summary judgment argued a [frivolous legal] position throughout its motion, failing to acknowledge the adverse holding of Fuddruckers. On page four, Continental argued that evidence of "deliberate, intentional copying by the Medax officers," could "presumptively support[] a finding of trade dress infringement in favor of Continental." (See Pl.'s Mem. P. & A. Supp. Mot. Summ. J. at 4:1-3). On page seven, Continental's motion asserted that "the fact finder can presume each of the three elements [of trade dress infringement] and thus presumptively find confusion as a matter of law based on a showing of deliberate, intentional copying.." (See Pl.'s Mem. P. & A. Supp. Mot. Summ. J. at 7:8-10). With regard to the essential element of secondary meaning, page seven developed this argument further by asserting:

> In the Ninth Circuit, uncontradicted testimony of intentional copying is sufficient to establish secondary meaning as a matter of law because "there is no logical reason for the precise copying save an attempt to realize upon a secondary meaning that is in existence." Audio Fidelity, Inc. v. High Fidelity Recordings, Inc., 283 F.2d 551, 558 (9th Cir. 1960); Accord: Fuddruckers v. Doc's B.R. Others, Inc., 826 F.2d 837, 843 (9th Cir. 1987).

(See Pl.'s Mem. P. & A. Supp. Mot. Summ. J. at 7:15-20). The primary Ninth Circuit decision Continental relied upon, Audio Fidelity, Inc., was based on an application of California trademark law, not the Lanham Act. The passage above also cites page 843 of Fuddruckers as being in "accord" with Continental's position, but that page offered no such support. It merely summarized the appellant's argument that the district court erred by "not allowing the jury to give enough weight to intentional copying." Fuddruckers, Inc., 826 F.2d at 843. The very next page of Fuddruckers, as stated earlier, explicitly rejected that argument. Id. at 844.

The motion continued by asserting that "deliberate copying supports a finding of secondary meaning on summary judgment…" (See Pl.'s Mem. P. & A. Supp. Mot. Summ. J. at 7:21-22). To support

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

this proposition, Continental urged the court to adopt the holding of an Arizona district court trademark infringement case decided three months *before* Fuddruckers. (See Pl.'s P. & A. Supp. Mot. Summ. J. at 7-8 (citing Hunting Hall of Fame v. Fdn., v. Safari Club Intern., 1987 U.S. Dist. LEXIS 13931, 6 U.S.P.Q.2D (BNA) 1765, 1770 (D. Ariz. 1987))). The motion emphasized that the Arizona decision accurately reflected trade dress law in the Ninth Circuit. Based entirely on evidence of Defendants' allegedly deliberate copying, the motion concluded, "the Court can and should find that Continental's inner packaging has secondary meaning." (See Pl.'s Mem. P. & A. Supp. Mot. Summ. J. at 8:24-26). Continental repeated this legal position on the final page of its opposition to the instant motion for summary judgment, stating:

> For all the reasons that Continental's trade dress is strong, that same evidence supports a finding of secondary meaning.... Admitted, deliberate copying by defendant is also controlling. See, Fuddruckers, Inc., 826 F.2d at 843 ("There is no logical reason for the precise copying save an attempt to realize upon a secondary meaning that is in existence.").

(See Pl.'s Mem. P. & A. Opp'n. Defs.' Mot. Summ. J. at 25:21-23). This passage had three distinct problems: (1) "deliberate copying by defendant" is not controlling, (2) Fuddruckers refutes, rather than supports, the position it was cited for, and (3) the quotation within the parenthesis, "there is no logical reason for the precise copying save an attempt to realize upon a secondary meaning that is in existence," does not appear on page 843 of Fuddruckers, or for that matter, anywhere else in the opinion.

(See August 12 Order at 28-30). In addition, the court has located other sections of Plaintiff's briefs that referenced authorities that explicitly rejected the argument that secondary meaning could be established by mere proof of deliberate copying.

97cv359

For example, the summary judgment motion's discussion of nonfunctionality cited page 516 of Clamp Mfg. Co., Inc. v. Enco Mfg. Co., Inc., 870 F.2d 512 (9th Cir. 1989). (See Pl.'s Mem. P. & A. Supp. Mot. Summ. J. at 9:8-9). In that very page, two paragraphs before the passage relied upon by Plaintiff's motion, the Ninth Circuit confirmed that "[e]vidence of deliberate copying ... supports a determination of secondary meaning but does not in itself shift the burden of proving secondary meaning from [plaintiff] to [defendant]." Clamp Mfg. Co., Inc., 870 F.2d at 516 (citing Fuddruckers, Inc., 826 F.2d at 844). Plaintiff's motion therefore cited the very page of a Ninth Circuit decision that rendered the motion legally frivolous.

Moreover, previous documents Plaintiff's attorneys filed in this action confirm that they *knew* that Ninth Circuit case law did not support an evidentiary presumption of secondary meaning based on deliberate copying. While this case was pending before Judge Keep, Plaintiff filed (1) an opposition to a motion to dismiss on November 20, 1997; and (2) an opposition to a motion for summary judgment on June 15, 1998. On pages 19-20 of the opposition to the motion to dismiss, Plaintiff's attorneys correctly represented that "[d]eliberate copying is also *relevant* to a determination of secondary meaning." (See Pl.'s Opp'n. to Mot. Dismiss at 19-28 [Doc. No. 13] (citing Fuddruckers, Inc., 826 F.2d at 843) (emphasis added)). The *opposition concluded that evidence of deliberate copying, coupled with Continental's* evidence of "substantial costs of design, development, sales, promotion, and advertising" supported a finding of secondary meaning. (Id. at 19:7-9). Page 19 of the opposition to Medax's motion for summary judgment similarly represented that "[d]eliberate copying by defendant is ... *relevant.*" (See Pl.'s Opp'n. to Mot. Summ. J. at 24:22 [Doc. No. 31] (citing Fuddruckers, Inc., 826 F.2d at 843) (emphasis added)).[1]   Both of these documents acknowledged the correct rule from

---

[1]      Counsel for Continental copied this passage almost verbatim into their recently filed opposition to Medax's motion for summary judgment. Continental's attorneys, however changed the word "relevant" to "controlling." (Compare Pl.'s Opp'n.

1  Fuddruckers–that deliberate copying is relevant but does not shift the burden of
2  proof to Medax.  Plaintiff's unexplained and dramatic change in legal position
3  confirms that Plaintiffs' attorneys either understood that they could not obtain
4  summary judgment without a burden-shifting presumption, or that they sought to
5  exploit the reassignment of this case from Judge Keep in November 1998.

6      The court finds the evidence of Continental's attorney's conscious conduct too
7  overwhelming to disregard.  Continental's attorneys cited Fuddruckers to support
8  a proposition the decision explicitly rejected, misquoted Fuddruckers, relied on a
9  legally questionable district court decision handed down two months before
10 Fuddruckers, and even cited the very page of a subsequent Ninth Circuit decision
11 that rendered their secondary meaning arguments frivolous.  Most compellingly,
12 previous documents filed with this court confirm that Plaintiff's attorneys knew that
13 they were misstating Ninth Circuit law at the time they filed their trade dress motion
14 on April 26, 1999.  The court therefore finds that ample evidence supports a
15 determination that Plaintiff's attorneys knowingly filed a frivolous motion for
16 summary judgment.[2]
17 //
18
19
20

---

21 to Mot. Summ. J. at 24:22 [Doc. No. 31] ("Deliberate copying by defendant is also
22 *relevant.*") with Pl.'s Mem. P. & A. Opp'n. Defs.' Mot. Summ. J. at 25:21-23 [Doc. No. 119]
   (nearly identical passage, but stating: "Deliberate copying by defendant is also *controlling.*")
23 (emphasis added)).

24      [2]   The court also notes that the attorneys' response includes sworn affidavits
25 from Mr. Edward C. Schewe, the attorney who drafted and signed Plaintiff's trade dress
26 motion, and Ms. Vickie Cafferky, a paralegal employed at the law firm of Brown Martin
   Haller & McClain.  Both declarations focus exclusively on the case misquotation from
27 Fuddruckers that the court identified above, but conspicuously omit any mention of the
28 trade dress motion.  Neither declaration contains a sworn statement that Plaintiff's
   attorneys subjectively believed their trade dress motion was nonfrivolous.

97cv359

III.   CONCLUSION AND ORDER

Plaintiff's trade dress motion for summary judgment transcended the boundaries of permissible advocacy.  Sanctions are therefore warranted under 28 U.S.C. § 1927, Civil Local Rule 83 and the court's inherent authority.

The court **ORDERS** Plaintiff's attorneys, the law firm of Brown Martin Haller & McClain, to pay Defendant Medax International, Inc. the sum total of all attorney's fees, costs, and other expenses specifically incurred in opposing Plaintiff's frivolous summary judgment motion filed April 26, 1999.[3]

The court **FURTHER ORDERS** Brown Martin Haller & McClain to pay to the Clerk of Court the amount of $5,000.00 as a fine for wasting judicial resources.[4] Such payment shall be made no later than **November 5, 1999** and made payable to the Nonappropriated Fund of the Court.  See Civil Local Rule 83.1.b.


**IT IS SO ORDERED.**


DATE: October 21, 1999

_____
Judge THOMAS J. WHELAN
United States District Court
Southern District of California

---

[3]      Medax shall file a declaration of expenses and costs, including supporting legal bills and time sheets, by November 5, 1999.  Medax may seek to file these documents *in camera* or under seal to prevent disclosure of information protected by the attorney-client privilege.  Alternatively, the parties may negotiate and execute a private agreement regarding the payment of sanctions to Medax.  Such an agreement would obviate the need for Medax to file supporting declarations with the court.  In the event such an agreement is consummated, the parties shall notify the court in writing.

[4]      Cf. Cannon v. Loyola Univ. of Chicago, 116 F.R.D. 243, 244 (N.D. Ill. 1987) (district court had power to order litigant to pay monetary sanction to Clerk of Court for waste of judicial resources) (collecting citations).

1  CC:   JOHN A HOUSTON, UNITED STATES MAGISTRATE JUDGE

2
       THOMAS J. ROSSA
3      EDGAR R. CATAXINOS
       TRASK, BRITT & ROSSA
4      P.O. BOX 2550
5      230 SOUTH 500 EAST, SUITE 300
       SALT LAKE CITY, UT 84102
6
7      ROBERT W. HARRISON
8      KRIS P. THOMPSON
       NEIL, DYMOTT, PERKINS, BROWN & FRANK
9      1010 SECOND AVE., SUITE 2500
10     SAN DIEGO, CA 92101-4959
11
       CARL L. BROWN
12     KATHLEEN A. PASULKA
13     EDWARD C. SCHEWE
       BROWN, MARTIN, HALLER & MCCLAIN
14     1660 UNION STREET
15     SAN DIEGO, CA 92101
16
17
18
19
20
21
22
23
24
25
26
27
28

97cv359